## FUNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DAWN TUCKER, et al.,                    )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )        No. 4:20-CV-1543 RLW
                                        )
ETHICON, INC., et al.                   )
                                        )
            Defendants.                 )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Ethicon, Inc. and Johnson & Johnson's (collectively, "Defendants") Motion for Partial Summary Judgment (ECF No. 35). Plaintiffs Dawn Tucker ("Ms. Tucker") and Mark Tucker (collectively, "Plaintiffs") oppose the Motion in part. Defendants did not file a reply and the Motion is fully briefed. For the following reasons, the Motion will be granted in part and denied in part.

## I. Factual and Procedural Background

The Plaintiffs are a married couple who reside in Missouri. On November 15, 2011, Ms. Tucker underwent implantation of a Johnson & Johnson Gynecare TVT Secur ("TVT-S") pelvic mesh device. The TVT-S device is used to treat stress urinary incontinence. Dr. Jack Ricketts, M.D., performed the surgery in St. Louis, Missouri. The Defendants designed, manufactured, and/or sold the TVT-S. The TVT-S allegedly caused various injuries to Ms. Tucker, including vaginal pain, pelvic pain, severe pain with intercourse, recurrence of incontinence, urinary tract infections, urinary frequency and urgency, and urinary retention. (ECF No. 35-1 at 5-6.)[1] Ms. Tucker alleges that the "bodily injuries related to the mesh often brings [her] to tears and it has

---

[1]All references to page numbers refer to the pagination automatically generated by the Court's CM/ECF electronic filing system that appears at the top of each page of an electronically filed document. These do not necessarily correspond to native page numbers on the document.

caused a loss of intimacy between" her and her husband, and has diminished her overall quality of law because of constant pain.  (Id. at 6.)  Ms. Tucker subsequently underwent two surgeries to remove or revise the pelvic mesh in 2012 and 2015, both performed in Missouri.

On September 23, 2016, Plaintiffs directly filed suit against Defendants on a Short Form Complaint in a multidistrict ligation ("MDL"), In re: Ethicon, Inc. Pelvic Repair System Products Liability Litigation, MDL No. 2327, in the U. S. District Court for the Southern District of West Virginia.  The MDL relates to allegedly defective pelvic mesh products including the TVT-S.  Plaintiffs' Short Form Complaint asserts the following claims against Defendants:

Count I –       Negligence
Count II –      Strict Liability – Manufacturing Defect
Count III –     Strict Liability – Failure to Warn
Count IV –      Strict Liability – Defective Product
Count V –       Strict Liability – Design Defect
Count VI –      Common Law Fraud
Count VII –     Fraudulent Concealment
Count VIII –    Constructive Fraud
Count IX –      Negligent Misrepresentation
Count X –       Negligent Infliction of Emotional Distress
Count XI –      Breach of Express Warranty
Count XII –     Breach of Implied Warranty
Count XIII –    Violation of Consumer Protection Laws
Count XIV –     Gross Negligence
Count XV –      Unjust Enrichment
Count XVI –     Loss of Consortium
Count XVII      Punitive Damages
Count XVIII     Discovery Rule and Tolling

(ECF No. 1 at 4-5.)

The case was transferred from the MDL to this Court on October 27, 2020, and reassigned on November 4, 2020.  In late October 2019, Defendants moved for partial summary judgment and Plaintiffs opposed the motion.  That motion is presently before the Court. Defendants seek judgment on Count I (to the extent it is based on negligent failure to warn or negligent manufacturing defect), and on Counts II, III, IV, VI, VII, VIII, IX, X, XI, XII, XIII,

XIV, and XV.  Plaintiffs oppose the dismissal of some but not all of these claims.  Defendants do not seek summary judgment on Plaintiffs' claims in Counts I (to the extent based on negligent design defect), V (strict liability design defect), XVI (loss of consortium), and XVII (punitive damages).

## II. Legal Standard

The Court may grant a motion for summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  The substantive law determines which facts are critical and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[2]  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

A moving party always bears the burden of informing the Court of the basis of its motion.  Celotex Corp., 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "The nonmoving party may not rely on allegations or denials," but rather "must substantiate her allegations with sufficient probative evidence that would permit a finding in her favor on more than mere speculation or conjecture."  Carter v. Pulaski Cnty. Special Sch. Dist., 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting Ball v. City of Lincoln, Neb., 870 F.3d 722, 727 (8th Cir. 2017) (cleaned up)).

---

[2]The parties agree Missouri substantive law governs this diversity case.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in her favor. Celotex Corp., 477 U.S. at 331.  The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"  Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

## III. Discussion

### A. Summary Judgment is Granted on Counts IV, VIII, XI, XII, and XV as Unopposed

As an initial matter, Plaintiffs do not oppose Defendants' motion for summary judgment on Count IV (strict liability–defective product), Count VIII (constructive fraud), Count XI (breach of express warranty), Count XII (breach of implied warranty), and Count XV (unjust enrichment).  (ECF No. 43 at 9, n.6.)  As a result, Defendants' motion will be granted as to Counts IV, VIII, XI, XII, and XV and these claims will be dismissed with prejudice and not discussed further.

### B. Manufacturing Defect Claims – Counts I, II, X, and XIV

Defendants move for summary judgment on Plaintiff's manufacturing defect claims in Counts I, II, X, and XIV.  Defendants state that under Missouri law, a plaintiff must prove that a deviation from the manufacturer's intended design caused her injury to establish a manufacturing defect claim under either a negligence or strict liability theory.  Defendants cite Richcreek v. General Motors Corp., 908 S.W.2d 772, 776 (Mo. Ct. App. 1995) (discussing characteristics of a manufacturing defect); and Pitman v. Ameristep Corp., 208 F.Supp.3d 1053, 1061 (E.D. Mo. 2016) ("A manufacturing defect has occurred when the consumer purchases or uses the product

and it is not in its intended condition.").  Defendants contend they are entitled to summary judgment on Plaintiffs' strict liability and negligence claims in Counts I, II, X, and XIV to the extent they are based on manufacturing defect, because Plaintiffs have no summary judgment evidence showing the Ethicon TVT-S deviated from its intended design or that such a deviation caused any injuries to Plaintiffs.

Plaintiffs concede this part of the Motion:  "[I]n light of the [MDL] Court's consistent rulings across these pelvic mesh MDLs as to manufacturing defect, Plaintiffs do not intend to pursue a separate claim for 'manufacturing defect' as such claim has been construed by the [MDL] Court ([i.e.,] not manufactured in accordance with design, or departure from manufacturer's design specifications)."[3]   (ECF No. 43 at 9 n.4.)  Plaintiffs further respond, however, that they "do intend to present evidence that Ethicon's manufacturing process and the raw materials used in the manufacture of the TVT-S product resulted in defects in the product, and in support of Plaintiffs' negligence, failure to warn, and punitive damages claims, which is consistent with the [MDL] Court's prior rulings."  (Id. at 10 n.4.)[4]  Plaintiffs emphasize that by not contesting Ethicon's summary judgment motion as to "manufacturing defect," they "do not forego, waive or in any way agree that any evidence relating to Ethicon's manufacturing process and raw materials are [sic] restricted in any way."  (Id.)

Because Plaintiffs do not contest Defendants' summary judgment motion on Counts I, II, X, and XIV as to claims based on manufacturing defect, i.e., any claim that the TVT-S product was not manufactured in accordance with design, or departed from the manufacturer's design

---

[3]This Court will adopt the MDL Court's prior rulings and not reexamine them.

[4]Plaintiffs' brief cites *Cisson*, C.A. No. 2:11-cv-00195, Dkt. No. 272 (Mem. Opinion and Order, Bard Mot. for Partial Summ. J.), at 8 ("Although this process is part of the manufacturing process of the Avaulta products, it would fall within the category of a design defect and not a manufacturing defect if the process, albeit faulty, were the same for all of these products … [T]he alleged inadequate pore size and use of improper polypropylene material in the Avaulta products is a design issue.").

specifications, the Court will grant the summary judgment on Counts I, II, X, and XIV to the extent the claims are based on manufacturing defect.

    C.  <u>Failure to Warn Claims – Counts I, III, X, and XIV</u>

Defendants move for summary judgment on Plaintiffs' strict liability and negligent failure to warn claims in Counts I, III, X, and XIV, asserting these claim fail on their merits as a matter of law due to lack of evidence that additional or different warnings from Ethicon would have prevented Plaintiffs' alleged injuries, as required to establish causation.

To establish a negligence or strict liability claim for failure to warn under Missouri law, Plaintiffs must establish, among other things, that the allegedly inadequate warning caused their alleged injuries. <u>See</u> <u>Moore v. Ford Motor Co.</u>, 332 S.W.3d 749, 756, 764 (Mo. 2011) (en banc) (elements of strict liability and negligent failure to warn claims). To establish proximate causation in a failure to warn claim, Plaintiffs "must show that a warning would have altered the behavior of the individuals involved" in the incident. <u>Id.</u> at 761-63 (internal quotations omitted). There is a presumption under Missouri law that a warning, if given, will be heeded. <u>Id.</u>

Missouri courts apply the learned intermediary doctrine in prescription drug and medical equipment or device cases involving failure to warn claims. <u>Doe v. Alpha Therapeutic Corp.</u>, 3 S.W.3d 404, 419 (Mo. Ct. App. 1999); <u>Brinkley v. Pfizer, Inc.</u>, 772 F.3d 1133, 1137-38 (8th Cir. 2014) (applying Missouri law). Under the doctrine, "a manufacturer of prescription drugs or products discharges its duty to warn by providing the physician with information about risks associated with those products." <u>Doe</u>, 3 S.W.3d at 419. "[A]ny warning given to the physician is deemed a warning to the patient." <u>Id.</u> "Under Missouri law, 'it is incumbent upon the manufacturer to bring the warning home to the doctor.'" <u>Winter v. Novartis Pharm. Corp.</u>, 739 F.3d 405, 408 (8th Cir. 2014) (quoting <u>Krug v. Sterling Drug, Inc.</u>, 416 S.W.2d 143, 146 (Mo.

1967)).  To establish causation under the learned intermediary doctrine, Plaintiffs must prove that different or additional warnings from Ethicon to the implanting physician would have altered the decision to implant TVT-S.  See Brinkley, 772 F.3d at 1138 (citing cases).

The deposition of Ms. Tucker's implanting doctor, Dr. Ricketts, had not been taken when the instant Motion was filed.  Plaintiffs respond that while Defendants distributed some information to patients, doctors, and the medical community through the TVT-S Instructions for Use ("IFU") and patient brochures, they did not disclose the complete and accurate list of known adverse events that would have been determinative for doctors and patients, such as Dr. Ricketts and Ms. Tucker, in deciding whether to use a TVT-S device.  Plaintiffs state that Dr. Ricketts testified he reviewed and relied upon the materials and documents provided to him by Defendants, and expected the medical device company to provide truthful, accurate, and complete information about the risks of their products.  (ECF No. 43-6, Pls.' Ex. 6, Ricketts Dep. 16:1-3; 19:12-16; 22:13-17; 126:10-18.)  Dr. Ricketts always implanted the TVT-S as instructed in the IFU.  (Id. 19:12-16.)  Dr. Ricketts testified the IFU was an important document that contained the warnings and contraindications for the mesh devices, and he relied on the IFU's warnings and contraindications when advising his patients of the risks and benefits of the device. (Id. 16:1-3; 16:20-17:3; 19:12-16; 22:13-17; 31:8-37:1; 126:10-18.)

Dr. Ricketts testified he did not know of the following risks of the TVT-S at the time he implanted Ms. Tucker and, had he known of these risks, he likely would not have implanted the device:

     a. Ethicon knew there was a risk of pain with intercourse which in some patients may never resolve.  (Id. 37:2-38:19.)

     b. Ethicon knew there was a risk of acute and/or chronic pain.  (Id. 37:2-38:19.)

c. Ethicon knew there was a risk of neuromuscular problems, including acute and/or chronic pain in the groin, leg, pelvic and abdominal area.  (<u>Id.</u> 37:2-38:19.)

d. Ethicon knew there was a risk one or more revision surgeries may be necessary because of these adverse reactions.  (<u>Id.</u> 37:2-38:19.)

e. Ethicon knew there was a risk in some cases in which the mesh needs to be removed in part or whole, that significant dissection may be required.  (<u>Id.</u> 37:2-38:19.)

f. Ethicon knew there was a risk of excessive contraction or shrinkage of the tissue surrounding the mesh.  (<u>Id.</u> 37:2-38:19.)

g. The introduction technique for the TVT-S had never been used in any other mid-urethral sling.  (<u>Id.</u> 19:24-20:2; 21:11-22:1; 30:2-6.)

h. The fixation part of the device had never been used in any other mid-urethral sling. (<u>Id.</u> 20:4-9; 21:11-22:1; 30:2-6.)

i. There had never been a sling as short as 8 centimeters, the length of the TVT-S.  (<u>Id.</u> 20:10-15; 21:11-22:1; 30:2-6.)

j. There were no randomized control trials performed by Ethicon before launching the TVT-S.  (<u>Id.</u> 20:16-20; 21:11-22:1; 30:2-6.)

k. Ethicon knew prior to its launch of the TVT-S that the only human study performed on the device prior to its launch was on 31 women for five weeks with a 60% complication rate.  (<u>Id.</u> 20:22-22:1; 30:2-6.)

l. Ethicon's high-level executive medical personnel, Axel Arnaud, knew that there was no medical need for the TVT-S.  (<u>Id.</u> 23:7-12; 23:19-21; 30:2-6.)

m. Ethicon's Australian doctors determined that the TVT-S should not be used, and it was withdrawn from the Australian market.  (<u>Id.</u> 23:22-24:18; 30:2-6.)

n. The inventor of the TVT-S knew that the product was a failure back in 2008.  (<u>Id.</u> 25:2-26:12; 30:2-6.)

o. Ethicon knew it was guilty of a cardinal sin regarding the TVT-S because they rushed it to market in the absence of sound data.  (<u>Id.</u> 28:20-30:6.)

p. Ethicon knew that the Prolene used in the TVT-Secur actually degrades, contrary to what was published in the IFU.  (<u>Id.</u> 32:25-33:23.)

q. The foreign body reaction could be lifelong for people implanted with the TVT-S.  (<u>Id.</u> 33:24-34:7; 34:15-35:18; 36:5-37:1.)

r. The risk of erosion with the TVT-S could be lifelong.  (Id. 35:19-21; 36:5-37:1.)

s. There was a lifelong risk of dyspareunia with the TVT-S.[5]  (Id. 35:22-25; 36:5-37:1.)

t. There was a lifelong risk of pelvic pain or pelvic spasming with the TVT-S.  (Id. 36:1-37:1.)

Dr. Ricketts testified he was taught by Ethicon through training and the IFU that any inflammatory reaction from the TVT-S would be temporary and any complication regarding the inflammation would be temporary as opposed to permanent and lifelong.  (Id. 33:24-34:7; 34:15-35:13.)  At the time he implanted the TVT-S in Ms. Tucker, Dr. Ricketts believed Ethicon that the risks of the device were transient, i.e., temporary and short-lived as described by the IFU, not lifelong.  (Id. 33:24-34:7; 34:15-36:4.)  It was also Dr. Ricketts' understanding at the time he implanted the TVT-S in Ms. Tucker that her body's reaction to the device would be temporary, and not a permanent and lifelong risk of chronic foreign body inflammation.  (Id.)  Because he was not aware of these lifelong risks, Dr. Ricketts did not inform Ms. Tucker of them.  (Id. 36:19-37:1.)  Dr. Ricketts testified that if he had known the risk of inflammation regarding the TVT-S was not transient or temporary, but could be chronic and lifelong, he likely would not have used the product.  (Id. 25:15-36:14.)  Dr. Ricketts also testified that at the least he would have advised Ms. Tucker of them during his risk/benefit analysis with her.  (Id. 30:1-6.35:15-36:18.)

Thus, Dr. Ricketts directly testified that if he had been informed about the true risks of the TVT-S device, it would likely have prevented him from implanting the device in Ms. Tucker. Specifically, Dr. Ricketts testified that if he had been informed of potentially lifelong, and not transient, risks of pain, dyspareunia, chronic foreign body response, and erosions, he likely

---

[5]Dyspareunia is defined the "occurrence of pain during sexual intercourse."  Stedman's Medical Dictionary 599 (28th ed. 2006).

would not have implanted the TVT-S in Ms. Tucker.  (Ricketts Dep. 33:24-34:7; 34:15-35:18-38:19).

Plaintiffs also state Ms. Tucker testified during her deposition that she would have never consented to the TVT-S implant had she known the true risks of the device.  Specifically, Ms. Tucker testified that if she had been told the TVT-S could cause permanent pain, she would have never consented to have it implanted.  She also testified that if she had known there was a risk of needing further surgeries to treat the pain, painful intercourse, or continued leakage, she would have never consented to the implant.  Ms. Tucker testified if she had been informed there was even a 1% chance of ongoing pain with intercourse, she would not have consented to the implant, and that if she had known the TVT-S had a high failure rate, she would not have consented to the implant.  (ECF No. 43-25, Pls.' Ex. 25, Dawn Tucker Dep. 65:2-18; 131:14-132:18; 146:18-23; 147:2-5; 147:8-148:3; 151:14-152:9).

Thus, Plaintiffs offer evidence that Dr. Ricketts testified that in the unlikely event he would have recommended the TVT-S device to Ms. Tucker had he been informed of its true risks, he would have at least shared those risks with her.  Plaintiffs also offer evidence Ms. Tucker testified that had she known of such risks, she would never have consented to the implantation.  Based on this evidence, Plaintiffs establish genuine issues of material fact as to proximate causation due to Defendants' allegedly inadequate warnings.  In addition, because Dr. Ricketts testified that if Defendants had informed him of the true risks of the TVT-S, he likely would have never implanted the device in Ms. Tucker, Plaintiffs present evidence to establish that Defendants' allegedly inadequate warnings are a direct cause of Ms. Tucker's injuries.

As a result, Defendants' motion for summary judgment on Plaintiffs' strict liability and negligent failure to warn claims in Counts I, III, X, and XIV will be denied.

D.  <u>Fraud and Consumer Protection Claims – Counts VI, VII, IX and XIII</u>

Defendants move for summary judgment on Plaintiff's claims in Count VI (common law fraud), Count VII (fraudulent concealment); Count IX (negligent misrepresentation); and Count XIII (violation of consumer protection laws), summarily arguing these are duplicative of Plaintiffs' failure to warn claims.  Defendants contend the gravamen of these claims is Ethicon's alleged failure to adequately disclose the risks of the TVT-S device, and assert that the Missouri learned intermediary doctrine also applies to claims based on misrepresentation or warranty, citing <u>In re NuvaRing Products Liability Ligation</u>, 2013 WL 3716389, at *7 n.12 (E.D. Mo. July 12, 2013).  Defendants assert they are entitled to judgment on each of these claims because (1) dismissal of fraud and warranty claims as "repackaged" failure to warn clams is appropriate, regardless of whether the underlying failure to warn claims survive summary judgment; and (2) Plaintiffs' fraud and warranty claims fail for lack of causation for the same reason as their failure to warn claims.  Because the Court has found Plaintiffs' failure to warn claims survive summary judgment, it does not discuss Defendants' second argument.

Plaintiffs respond that their fraud and consumer protection claims are separate causes of action from their failure to warn claims, with important legal differences between their elements and standards of proof.  Plaintiffs assert that under Missouri law, a products liability plaintiff may recover on theories of strict liability in tort, negligence, consumer protection, or fraud, that are not mutually exclusive.  Plaintiffs state that Missouri courts have specifically allowed similar cases pursuing claims under fraud, the Missouri Merchandising Practices Act, and failure to warn, analyzing the claims separately and differently, citing <u>In re NuvaRing</u>, 2013 WL 3716389 at *5-7.

Defendants do not adequately explain or support their argument that Plaintiffs' fraud and consumer protection claims must be dismissed as duplicative of the failure to warn claims. Defendants do not brief the existence, or absence, of fraudulent statements and offer no citation to the record to establish the basis or nature of these claims.  As such, they do not meet their burden on summary judgment.[6]  To the extent there is overlap among the claims Plaintiffs bring, they are entitled to plead and pursue them in the alternative.  See Rule 8(d), Fed. R. Civ. P. Courts applying Missouri law have permitted fraud and warranty claims to be prosecuted together with negligent and strict liability failure to warn claims.  See e.g., Wegmann v. Ethicon, Inc., 2020 WL 5814475, at *10 (E.D. Mo. Sept. 30, 2020); Dorgan v. Ethicon, Inc., 2020 WL 5372134, at *3 (W.D. Mo. Sept. 8, 2020); Pitlyk v. Ethicon, Inc., 2020 WL 8214073, at *2 (E.D. Mo. Sept. 2, 2020); In re NuvaRing, 2013 WL 3716389, at *7.

Defendants' Motion will be denied as to Counts VI, VII, IX, and XIII.

E.  Fraudulent Concealment –Count VII

Defendants move for summary judgment on Count VII on a second ground, arguing Plaintiffs cannot maintain an independent claim for fraudulent concealment because there is no independent cause of action for fraudulent concernment under Missouri law, citing Nestlé Purina Petcare Co. v. Blue Buffalo Co. Ltd., 181 F.Supp.3d 618, 640 (E.D. Mo. 2016) ("Missouri courts have not recognized a separate claim of fraudulent concealment.").  Instead, "in cases where misrepresentation is alleged to have occurred by nondisclosure, 'a party's silence in the face of a legal duty to speak replaces the first element [of a fraudulent misrepresentation claim]: the existence of a representation.'"  Id. (quoting Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 765 (Mo. 2007) (en banc)).

---

[6]In contrast, Plaintiffs' opposition memorandum lists specific acts of alleged fraudulent concealment, see ECF No. 43 at 3-5, ¶¶ a.-h.  Because Defendants do not meet their initial summary judgment burden, the Court does not discuss Plaintiffs' evidence.

Plaintiffs respond that Defendants' argument is essentially form over substance, as Missouri recognizes a cause of action for fraudulent misrepresentation, and their fraudulent concealment claim is subsumed by the fraudulent misrepresentation cause of action under the Missouri Supreme Court's decision in Hess, 220 S.W.3d at 765. Plaintiffs state that the Short Form Complaint (ECF No. 1) they filed in the MDL relates back to the First Amended Master Long Form Complaint and Jury Demand (ECF No. 43-28, Pls.' Ex. 28, First Am. Master Long Form Compl.) ("Master Complaint"). Plaintiffs assert that while the Short Form Complaint's generic causes of action apply generally to plaintiffs nationwide, the Master Complaint sufficiently pleads allegations satisfying all nine elements of Missouri's fraudulent misrepresentation claim. Plaintiffs contend their fraudulent concealment claim should be construed as the first element of Missouri's fraudulent misrepresentation claim. Hess, 220 S.W.3d at 765. Plaintiffs assert they have shown sufficient evidence, as outlined in their summary judgment opposition, that Defendants made multiple omissions concealing the truth regarding the health risks and dangers of the TVT-S device, and that Ms. Tucker and her implanting surgeon materially relied on these fraudulent misrepresentations and omissions, proximately causing her injuries.

To make a submissible case of fraudulent misrepresentation under Missouri law, a plaintiff must prove nine elements: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." Hess, 220 S.W.3d at 765. In Hess, the Missouri Supreme Court stated it had not

recognized a separate tort of fraudulent nondisclosure, but held that "a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation." Id.

Defendants' assertion there is no independent cause of action for fraudulent concealment in Missouri does not entitle them to summary judgment. Defendants' argument fails to acknowledge the import of the Missouri Supreme Court's statement in Hess: Under Missouri law, a common law claim for fraudulent non-disclosure or concealment "falls under the rubric of fraudulent misrepresentation." Parke v. Progressive Cas. Ins. Co., 613 S.W.3d 428, __,[7] 2020 WL 3240982, at *2 (Mo. Ct. App. June 16, 2020) (citing Hess, 2020 S.W.3d at 765; Richards v. ABN AMRO Mortg. Grp., Inc., 261 S.W.3d 603, 607 (Mo. App. W.D. 2008)). "Fraudulent concealment is 'based on the misrepresentation of a material fact by silence.'" Anderson v. Ford Motor Co., 2017 WL 6733972, at *2 (W.D. Mo. Dec. 29, 2017). "In a case of fraudulent concealment, 'a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation.'" Id. (quoting Hess, 220 S.W.3d at 765-66), citing Tension Envelope Corp. v. JBM Envelope Co., 876 F.3d 1112, 1120 (8th Cir. 2017)); see also Parke, 613 S.W.3d 428, 2020 WL 3240982, at *2 (same); Doe v. Ratigan, 481 S.W.3d 36, 45 (Mo. Ct. App. 2015) (same); Bonhomme Inv. Partners, LLC v. Hayes, 2015 WL 2383475, at *7 (E.D. Mo. May 19, 2015) (same). "Whether or not there exists a duty to disclose is determined by the facts of each individual case." Parke, 613 S.W.3d 428, 2020 WL 3240982, at *2 (citing Hess, 220 S.W.3d at 765). "A duty to speak arises where one party has superior knowledge or information that is not reasonably available to the other." Hess, 220 S.W.3d at 765.

Thus, while a fraudulent concealment or nondisclosure claim is not a separate cause of action under Missouri law, it "falls under the rubric of fraudulent misrepresentation" as the first

_____

[7]Page cites in the South Western Reporter Third for the Parke case are not available as of the date of this Memorandum and Order.

element of that claim—the existence of a representation—is replaced with a party's silence in the face of a legal duty to speak.  Hess, 220 S.W.3d at 765.  The remaining elements of the cause of action remain the same.  Id.  Plaintiffs' fraudulent concealment claim in Count VII is valid under Missouri law as subsumed by fraudulent misrepresentation.  Compare Pitlyk, 2020 WL 8214073, at *3 (denying Ethicon's motion for summary judgment on fraudulent concealment claim; construing claim as fraudulent misrepresentation claim.)[8]  Defendants' Motion will be denied as to Count VII.

F. Consumer Protection Claim (Missouri Merchandising Practices Act) – Count XIII

Defendants also move for summary judgment on a second ground on Plaintiffs' claim for violation of consumer protection laws in Count XIII.  Defendants properly construe this as a claim under the Missouri Merchandising Practices Act ("MMPA"), §§ 407.010–.130, Mo. Rev. Stat.  Defendants state the MMPA provides a private cause of action only to "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss . . . as a result of the use or employment" of a prohibited act or practice. § 407.025 Mo. Rev. Stat.; Fabas Consulting Int'l, Inc. v. Jet Midwest, Inc., 74 F.Supp.3d 1026, 1030 n.4 (W.D. Mo. 2015) (listing elements of a private action under MMPA). Defendants contend the allegedly defective good at issue here was not purchased or leased by Plaintiffs for primarily personal, family, or household use, but rather the TVT-S device was purchased by the implant facility for medical and commercial purposes.  As a result, they contend the MMPA does not give Plaintiffs the right to sue for any alleged violations, and their consumer protection claim in Count XIII fails as a matter of law.

---

[8]Contra Wegmann, 2020 WL 5814475, at *11 (granting Ethicon's motion for summary judgment on the basis that "Plaintiff cannot maintain an independent claim for fraudulent concealment").

Plaintiffs respond that Defendants misinterpret the law in Missouri.  They state that the "MMPA prohibits 'deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact *in connection with the sale or advertisement of any merchandise in trade or commerce*' by defining such activity as an unlawful practice." Plubell v. Merck & Co., Inc., 289 S.W.3d 707, 711 (Mo. Ct. App. 2009) (quoting § 407.020.1) (emphasis added).  "Civil actions may be brought under the MMPA to recover actual damages by '[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of [an unlawful practice].'" Id. 711-12 (quoting § 407.025.1).  Plaintiffs state that in addition to Ms. Tucker's injuries, subsequent surgeries, and pain and suffering, she incurred ascertainable economic damages, including but not limited to the funds she paid for the device itself.  Plaintiffs assert Ms. Tucker purchased the TVT-S device in the stream of commerce for personal purposes, as defined by the MMPA.

In support, Plaintiffs rely on Plubell, where the plaintiffs' "claims [arose] from Merck's sale of Vioxx in Missouri and its alleged misrepresentations as to the drug's risks, giving rise to the legal theory of an unlawful practice under the MMPA." Id. at 715-16.  Plaintiffs also cite In re NuvaRing, 2013 WL 3716389, at *7 (denying summary judgment on MMPA claim involving a medical device/pharmaceutical product).  They assert that Ms. Tucker's MMPA claim similarly arises from Defendants' sale of the TVT-S product in Missouri and their misrepresentations as to the device's true risks, giving rise to an unlawful practice under the MMPA.  Plaintiffs claim they suffered an ascertainable loss of money from Ms. Tucker's purchase of the TVT-S device that was implanted in her body by Dr. Ricketts.

Defendants' summary judgment argument on this claim is not well developed.  To the extent Defendants contend Plaintiffs cannot bring an action under the MMPA because Plaintiffs did not purchase the TVT-S directly from them, this is contrary to Missouri law.  In Gibbons v. J. Nuckolls, Inc., 216 S.W.3d 667 (Mo. 2007) (en banc), the Missouri Supreme Court held the MMPA's "plain language does not contemplate a direct contractual relationship between plaintiff and defendant, and Missouri courts have not imposed such a requirement through statutory construction."  Id. at 669.  The court declined to construe the MMPA to impose a limitation that private plaintiffs can only sue a direct seller, and held privity of contract is not required.  Id. at 668, 670.  In Gibbons, the court held that a wholesaler who sold a car to a dealer, who then sold it to the plaintiff, could be liable to the plaintiff/buyer under the MMPA when the wholesaler failed to inform the dealer that the car had previously been in an accident.  Id. at 668. The MMPA thus does not require the type of contractual relationship Defendants contend is necessary for Plaintiffs to assert a claim.  Id.; see also Pitlyk, 2020 WL 8214073, at *4 (rejecting similar argument under the MMPA); Zaccarello v. Medtronic, Inc., 38 F.Supp.3d 1061, 1072 (W.D. Mo. 2014) (same).

To the extent Defendants contend the TVT-S device itself is not within the scope of the statute, or was not purchased for "personal, family, or household purposes," their contention is not supported by any citation to Missouri case law.  Such an argument is not persuasive on its face because the MMPA is "paternalistic legislation designed to protect those that could not otherwise protect themselves."  Berry v. Volkswagen Group of Am., Inc., 397 S.W.3d 425, 533 (Mo. 2013) (en banc) (quoted case omitted).  The MMPA has a "broad scope" that evidences the "legislature's clear policy to protect consumers[.]"  Huch v. Charter Commc'ns, Inc., 290 S.W.3d 721, 725-26 (Mo. 2009) (en banc) (quoted case omitted).  Missouri courts have applied

17

the statute broadly in numerous contexts, and the Missouri Supreme Court has stated that "case law . . . has interpreted the MMPA to provide protection to consumers in a gradually increasing variety of circumstances." Conway v. CitiMortgage, Inc., 438 S.W.3d 410, 416 (Mo. 2014) (en banc). As relevant here, MMPA claims based on medical devices have survived dispositive motions in several cases applying Missouri law. See, e.g., Pitlyk, 2020 WL 8214073, at *4 (denying summary judgment on MMPA claim in TVT-S pelvic mesh medical device case); Zaccarello, 38 F.Supp.3d at 1072 (denying motion to dismiss MMPA claim in Infuse Bone Graft/LT–Cage Lumbar Tapered Fusion Device medical device case); In re NuvaRing, 2013 WL 3716389, at *7 (denying summary judgment on MMPA claim in flexible vaginal ring hormonal contraceptive case).

Defendants' motion for summary judgment on Plaintiffs' MMPA claim in Count XIII will be denied.

### G.  Negligent Infliction of Emotional Distress—Count X

Defendants move for summary judgment on Plaintiffs' claim for negligent infliction of emotional distress ("NIED") in Count X, asserting that Missouri law requires a plaintiff to prove she suffered "emotional distress or mental injury [that] is medically diagnosable and of sufficient severity to be medically significant," Henson v. Greyhound Lines, Inc., 257 S.W.3d 627, 629 (Mo. Ct. App. 2008), and must establish those injuries through expert testimony, Turner v. Iowa Fire Equipment Co., 229 F.3d 1202, 1210 (8th Cir. 2000). Defendants assert that Plaintiffs have no evidence to establish medically significant or diagnosable emotional distress or mental injury caused by the TVT-S, and note that Plaintiffs' specific causation expert, Dr. Rosenzweig, does not identify any mental injuries caused by or related to Ms. Tucker's TVT-S.

Plaintiffs respond that Defendants should have known their conduct in making material misrepresentations about and concealing the true risks of the TVT-S device would involve an unreasonable risk of causing Ms. Tucker distress.   They state Ms. Tucker broke down emotionally several times during her deposition when she testified about how the TVT-S impacted intimacy with her husband and their marriage, and she testified of her intense feelings of guilt caused by the TVT-S implant.   (ECF No. 43-25, Dawn Tucker Dep. 145:15-146:16.) Plaintiffs point to Mark Tucker's testimony about his wife's fragile emotional state after she had the TVT-S implanted, and specifically that she experiences stress, depression, and guilt.   (ECF No. 43-27, Pls.' Ex. 27, Mark Tucker Dep. 32:5-13; 85:21-24; 88:5-9.)   Plaintiffs contend this is sufficient evidence that Ms. Tucker's emotional distress is medically significant, severe, and diagnosable to raise a genuine issue of material fact.

In Missouri, "[w]here the plaintiff is a direct victim of the defendant's negligence and seeks damages for emotional distress, the plaintiff is required to prove two additional elements: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant."   Jarrett v. Jones, 258 S.W.3d 442, 448 (Mo. 2008) (en banc).   In addition, "Missouri law requires an expert [to] establish causation of medically diagnosable distress. . . .  Without expert testimony, this claim [of NIED] is invalid under Missouri law."   Bi-Rite Petroleum, Ltd. v. Coastal Ref. & Mktg., Inc., 282 F.3d 606, 609 (8th Cir. 2002) (citing Soper v. Bopp, 990 S.W.2d 147, 157 (Mo. Ct. App. 1999)); see also Turner, 229 F.3d at 1210 ("Under Missouri law, emotional distress injuries . . . must be established through expert testimony"); Sutton v. Ethicon, Inc., 2020 WL 5801049, at *3 (E.D.

Mo. Sept. 29, 2020) (granting summary judgment on NIED claim where plaintiffs offered no expert testimony to support emotional distress injuries).

Here, Plaintiffs' response does not identify any expert testimony, or even any evidence that Ms. Tucker consulted a physician about her emotional distress or was prescribed medication because of her symptoms.  In the absence of expert testimony, Defendants' motion for summary judgment will be granted on Plaintiffs' claim in Count X for negligent infliction of emotional distress.

H.  <u>Gross Negligence (Recklessness) – Count XIV</u>

Defendants move for summary judgment on Plaintiffs' gross negligence claim in Count XIV, asserting it fails as a matter of law because Missouri does not recognize "degrees of negligence and therefore do[es] not distinguish between negligence and gross negligence." <u>Duncan v. Missouri Bd. for Architects, Prof'l Engr's & Land Surveyors</u>, 744 S.W.2d 524, 532 (Mo. Ct. App. 1988).

Plaintiffs respond that while Missouri does not recognize degrees of negligence, it does recognize an independent cause of action for recklessness in lieu of a gross negligence claim:

> The fact that Missouri does not recognize legal degrees of negligence has nothing to do with whether Missouri recognizes a cause of action for recklessness.  Recklessness looks to the tortfeasor's state of mind.  Recklessness is an aggravated form of negligence which differs in quality, rather than in degree, from ordinary lack of care.  It is applied to conduct which is negligent, rather than intentional, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended.

<u>Hatch v. V.P. Fair Foundation, Inc.</u>, 990 S.W.2d 126, 139 (Mo. Ct. App. 1999) (internal citations omitted).  Plaintiffs assert that the Missouri courts have carved out a recklessness cause of action that subsumes their gross negligence claim.  Plaintiffs states that while their MDL Short Form Complaint includes a generic cause of action for gross negligence, the related Master Complaint

(Pls.' Ex. 28) includes allegations of Defendants' willful, wanton, and reckless conduct, and their summary judgment evidence shows Defendants willfully, wantonly, and recklessly misrepresented and omitted the true risks of the TVT-S device to Ms. Tucker's implanting surgeon, proximately causing her injuries.

 Plaintiffs are correct that Missouri courts recognize a cause of action for recklessness that is distinct from negligence, despite the fact that Missouri does not recognize legal degrees of negligence. Hatch, 990 S.W.2d at 139. The Missouri Supreme Court has explained the recklessness cause of action as follows:

> Negligence is one kind of tort, an unintentional injury usually predicated upon failure to observe a prescribed standard of care (52 Am.Jur., Sec. 20) while a willful, wanton, reckless injury is another kind of tort, an intentional injury often based upon an act done in utter disregard of the consequences. 52 Am.Jur., Secs. 22, 23; 38 Am.Jur., Secs. 4, 5. Reckless conduct may be negligent in that it is unreasonable *but it is and must be something more than unreasonable, "it must contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and therefore, negligent.*" 2 Restatement, Torts, p. 1294. "The actor's (defendant's) conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." 2 Restatement, Torts, Secs. 500, 501.

Nichols v. Bresnahan, 212 S.W.2d 570, 573 (Mo. 1948) (emphasis added). "Recklessness looks to the tortfeasor's state of mind." Hatch, 990 S.W.2d at 139. It "is an aggravated form of negligence which differs in *quality*, rather than in *degree*, from ordinary lack of care." Id. (emphases added). "It is possible to have a cause of action for [recklessness] which does not in any manner involve negligence." Nichols, 212 S.W.2d at 573.

 The Court will construe Plaintiffs' gross negligence claim in the Short Form Complaint as a recklessness claim under Missouri law. Defendants' summary judgment arguments do not

address whether they are entitled to judgment as a matter of law on a recklessness claim.  Cf. Dilley v. Valentine, 401 S.W.3d 544, 550-51 (Mo. Ct. App. 2013) (reversing grant of summary judgment where trial court analyzed recklessness claim under standards applicable to negligence claims).  Defendants' Motion will be denied as to Count XIV.

## IV. Conclusion

For the foregoing reasons, Defendants Ethicon, Inc. and Johnson & Johnson's Motion for Partial Summary Judgment (ECF No. 35) is **GRANTED in part** and **DENIED in part**, as follows:

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment is **GRANTED** as to Counts IV, VIII, XI, XII, and XV, as unopposed.

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment is **GRANTED** as to Counts II and X; and **GRANTED** as to Counts I and XIV to the extent the claims are based on manufacturing defect.

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment is **DENIED** as to the remaining claims in Counts I and XIV, and **DENIED** as to Counts III, VI, VII, IX, XIII, and XIV.

An appropriate Partial Judgment will accompany this Memorandum and Order.

\*       \*       \*

The remaining claims in this action are:

| | |
|---|---|
| Count I | (negligence, including negligent design defect and failure to warn) |
| Count III | (strict liability–failure to warn) |
| Count V | (strict liability–design defect) |
| Count VI | (common law fraud) |
| Count VII | (fraudulent misrepresentation/concealment) |
| Count IX | (negligent misrepresentation) |
| Count XIII | (violation of MMPA) |
| Count XIV | (recklessness) |

Count XVI    (loss of consortium)
Count XVIII   (punitive damages)


**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this <u>5th</u> day of February, 2021.