UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAWN TUCKER, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 4:20-CV-1543 RLW |
| ETHICON, INC, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Ethicon, Inc. and Johnson & Johnson's (collectively, "Defendants") Motion to Limit the Case-Specific Opinions and Testimony of Paul J. Michaels, M.D. (ECF No. 37), and Motion to Limit the Case-Specific Opinions and Testimony of Bruce Rosenzweig, M.D. (ECF No. 39). Plaintiffs Dawn Tucker ("Ms. Tucker") and Mark Tucker (collectively, "Plaintiffs") oppose the Motions. Defendants did not file a reply and the Motions are fully briefed. For the following reasons, the Defendants' Motions to limit Dr. Michaels and Dr. Rosenzweig's testimony will be denied.

**I. Factual and Procedural Background**

The Plaintiffs are a married couple who reside in Missouri. On November 15, 2011, Ms. Tucker underwent implantation of a Johnson & Johnson Gynecare TVT Secur ("TVT-S") pelvic mesh device. The TVT-S device is used to treat stress urinary incontinence. Dr. Jack Ricketts, M.D., performed the surgery in St. Louis, Missouri. The Defendants designed, manufactured, and/or sold the TVT-S. The TVT-S allegedly caused various injuries to Ms. Tucker, including vaginal pain, pelvic pain, severe pain with intercourse, recurrence of incontinence, urinary tract

infections, urinary frequency and urgency, and urinary retention. (ECF No. 35-1 at 5-6.)[1] Ms. Tucker alleges that the "bodily injuries related to the mesh often brings [her] to tears and it has caused a loss of intimacy between" her and her husband, and has diminished her overall quality of law because of constant pain. (Id. at 6.) Ms. Tucker subsequently underwent two surgeries to remove or revise the pelvic mesh in 2012 and 2015, both performed in Missouri.

On September 23, 2016, Plaintiffs directly filed suit against Defendants on a Short Form Complaint in a multidistrict ligation ("MDL"), In re: Ethicon, Inc. Pelvic Repair System Products Liability Litigation, MDL No. 2327, in the United States District Court for the Southern District of West Virginia. The MDL relates to allegedly defective pelvic mesh products including the TVT-S. Defendants filed the instant Motions in the MDL court to limit the case-specific opinions and testimony of Plaintiffs' expert witnesses Dr. Michaels and Dr. Rosenzweig in November 2019. The Motions were pending at the time the case was transferred to this Court in October 2020.

**II. Legal Standard**

The admissibility of expert testimony in diversity cases in federal court is governed by federal law. Clark ex rel. Clark v. Heidrick, 150 F.3d 912, 914 (8th Cir. 1998). Federal Rule of Evidence 702 controls the admission of expert opinion and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

---

[1] All references to page numbers refer to the pagination automatically generated by the Court's CM/ECF electronic filing system that appears at the top of each page of an electronically filed document. These do not necessarily correspond to native page numbers on the document.

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (discussing criteria for admissibility of expert testimony under Rule 702).

Under Rule 702, the trial court has gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Daubert, 509 U.S. at 597). "When making the reliability and relevancy determinations, a district court may consider: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community." Russell v. Whirlpool Corp., 702 F.3d 450, 456 (8th Cir. 2012) (citing Daubert, 509 U.S. at 593-94). "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject Daubert factors as the particular case demands." Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005). "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." Id.

"Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir. 1999). The rule "favors admissibility if the testimony will assist the trier of fact." Clark, 150 F.3d at 915. Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Id. (citation and internal quotation omitted).

As a general rule "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Nebraska Plastics, Inc. v. Holland Colors Americas, Inc., 408 F.3d 410, 416 (8th Cir. 2005) (quoted case omitted). That said, "if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded." Id. (quoted case omitted). An expert opinion is fundamentally unsupported when it "fails to consider the relevant facts of the case[.]" Id.

**III. Discussion**

  A. Motion to Limit Dr. Michaels' Case-Specific Opinions and Testimony

Dr. Paul J. Michaels, M.D. is a pathologist who is board-certified in anatomic pathology, clinical pathology, and cytopathology, and was disclosed by Plaintiffs on issues of general and specific causation. Defendants do not challenge Dr. Michaels' credentials or qualifications but move to exclude his case-specific opinions regarding clinical complications.

In his Case-Specific Report (ECF No. 37-1), Dr. Michaels reviewed four microscopic slides containing tissue specimens from Ms. Tucker's September 2015 surgery. Dr. Michaels described his pathological findings and "identified some of the histological findings that have been described in association with transvaginal mesh grafts and that also correlate with her reported symptomology." (Id. at 5.) Specifically, Dr. Michaels stated that his histopathological analysis of Ms. Tucker's explanted vaginal mesh specimen demonstrated "an inflammatory and fibrosing reaction secondary to the mesh, including scar plate formation, chronic inflammation, and foreign body granuloma formation." (Id. at 3, 18.) Dr. Michaels opines to a reasonable degree of medical and scientific certainty that Ms. Tucker's reported signs and symptoms of mesh erosion, pelvic pain, and dyspareunia "were the direct result of these pathological features[.]" (Id. at 3.)

4

Defendants argue that Dr. Michaels opines, without citing to or identifying any literature or scientific material in support, that the implantation of mesh can be associated with a number of pathological findings, which can be associated with various clinical complications for the patient, including pain.  (Id. at 3-6.)  Defendants state that after Dr. Michaels briefly describes his pathology findings from examination of Ms. Tucker's explanted mesh, he opines, without any support or explanation, that all of Ms. Tucker's "reported signs/symptoms of mesh erosion, pelvic pain, and dyspareunia were the direct result of these pathological features[.]"  (Id. at 3, 18).  Defendants contend there is no support or explanation contained in Dr. Michaels' Case-Specific Report for this opinion and it should be excluded as unreliable.

Defendants also cite a ruling by the MDL Court that a different expert pathologist's opinions linking pathological findings to clinical complications based on review of explanted mesh samples, without comparing against a "proper control[,]" were unreliable.  In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig., 2016 WL 4582228, at *4 (S.D.W. Va. Sept. 1, 2016).  Defendants state that here, Dr. Michaels did not compare the specimen removed from Ms. Tucker to a control sample of mesh removed from a patient who did not have pain complaints, and the only other basis for his opinion that the mesh caused Ms. Tucker's alleged injuries are generalized statements indicating that certain pathological findings can be associated with certain clinical complications, including pain, dyspareunia, and mesh erosion.  Defendants contend there is no support or explanation contained in his Case-Specific Report for Dr. Michaels' opinion that Ms. Tucker's reported mesh erosion, pelvic pain, and dyspareunia are "the direct result" of the TVT-S, and argue this opinion should therefore be excluded as unreliable.

Dr. Michaels' Case-Specific Report incorporates by reference his general expert report dated July 1, 2016, and his deposition taken June 18, 2016 (ECF No. 37-1 at 2).  Dr. Michaels' Deposition Exhibit 4 is a reliance list of the literature, papers, and studies he reviewed in coming

5

to his general opinions in the case.² Dr. Michaels' Case-Specific Report shows that he conducted a detailed review of Plaintiff's medical records and tissue samples. Dr. Michaels testified that his opinions are reliably based on a combination of his personal experience as a diagnostic anatomic pathologist, detailed microscopic examination of Ms. Tucker's explanted pelvic mesh, review of Ms. Tucker's medical records, review of deposition testimony in Ms. Tucker's case, frequent interactions with clinical colleagues in the day-to-day management of patients, past and ongoing extensive review of pertinent literature in the field, various internal Ethicon documents, peer-reviewed publications, and depositions of Ethicon's employees.

Dr. Michaels' case-specific opinions appear to be grounded on his general opinions and his review of Plaintiff's medical history, tissue samples, and explanted pelvic mesh. These are sufficiently reliable for purposes of Daubert, even if Dr. Michaels did not use a control sample. After the MDL Court excluded Dr. Iakovlev's opinions about clinical complications for failure to use a control sample, 2016 WL 4582228, at *4, it denied a motion to exclude Dr. Michaels' case-specific opinions, finding them sufficiently relevant and reliable over the Defendants' objections that, among other things, Dr. Michaels did not consider a control sample. In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig., 2017 WL 2840473, at *2 (S.D.W. Va. June 30, 2017). This ruling specific to Dr. Michaels' opinions is a strong indication the MDL Court's earlier ruling involving another expert's opinions should not control here. Defendants' objections go to the weight rather than the admissibility of Dr. Michaels' testimony, and their perceived weaknesses in the testimony are a matter for cross-examination at trial.

The Court will deny Defendants' Motion to exclude Dr. Michaels' case-specific opinions and testimony.

---

²See Deposition of Paul J. Michaels (ECF No. 37-1 at 18). It is not clear if Michaels Deposition Exhibit 4 has been made part of the record on remand from the MDL.

B.  Motion to Limit Dr. Rosenzweig's Case-Specific Opinions and Testimony

Dr. Bruce Rosenzweig, M.D. is a urogynecologist and a professor of obstetrics and gynecology in Chicago, Illinois.  Dr. Rosenzweig was disclosed by Plaintiffs on issues of general and specific causation.  Defendants do not challenge Dr. Rosenzweig's credentials or qualifications but move to exclude certain of his case-specific opinions as speculative, unreliable, and otherwise inadmissible under Rule 702 and Daubert.

As an initial matter, Defendants filed multiple motions in different case "waves" in the MDL to exclude aspects of Dr. Rosenzweig's general causation opinions and testimony.  This case was part of Wave 12.  The MDL Court reserved ruling on some issues concerning Dr. Rosenzweig in prior waves, and did not issue any ruling on Defendants' motion to exclude Dr. Rosenzweig's general expert testimony in Wave 12, which remained pending upon transfer from the MDL.  Defendants' motion to limit Dr. Rosenzweig's testimony filed in Wave 12 referred to and incorporated portions of multiple prior motions filed in earlier waves.  Following consultation with counsel, the Court ordered the parties to rebrief and file new motions on the reserved Daubert issues on general expert testimony.  See Order of Jan. 20, 2021 (ECF No. 81). The parties filed eight new motions as to general expert testimony on February 19 2021, including Defendants' new motion as to Dr. Rosenzweig's general expert testimony which is not fully briefed.

Defendants' motion to limit Dr. Rosenzweig's case-specific testimony overlaps with their earlier motion to exclude his general expert testimony, as Defendants seek to exclude "opinions derived from his inadmissible general opinions, namely, opinions about (a) Ethicon's state of mind, knowledge, and conduct, (b) the adequacy of Ethicon's warnings for Ms. Tucker's Ethicon mesh implant, and (c) any opinion that Ms. Tucker suffered complications caused by degradation and other alleged biomaterial properties of her mesh implant."  (ECF No. 40 at 1.)  Defendants

7

contends their general challenges "apply equally" to Dr. Rosenzweig's opinions specific to Ms. Tucker.  (Id. at 3.)  As the MDL Court refused to do, this Court will not rule on general causation issues raised in a motion directed to specific causation issues.  See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig., 2017 WL 2214895, at *2 (S.D.W. Va. May 18, 2017). Consequently, the Court will deny Defendants' Motion on these issues.

Defendants assert the Court should preclude Dr. Rosenzweig from offering the following case-specific opinions: (1) opinions about the adequacy of the implanting physician's informed consent process for Ms. Tucker; (2) opinions concerning degradation, rigidity, roping, stiffening, curling, or cording; (3) any opinions concerning Ms. Tucker's need for future surgical intervention; and (4) any opinion that Ms. Tucker's TVT-S implant had "defects" or was "defective."  The Court addresses each in turn.

### 1. Opinions about the adequacy of the implanting physician's informed consent process for Ms. Tucker

Defendants argue Dr. Rosenzweig should not be allowed to opine that Ethicon's allegedly inadequate warning prevented Ms. Tucker from providing proper informed consent for her TVT-S implant procedure.  Defendants assert without citing any Missouri authority that the adequacy of the informed consent process is irrelevant to Plaintiffs' claims because under the learned intermediary doctrine, the only relevant issue is whether the warnings provided by Ethicon to the implanting physician were adequate.  Defendants also contend that when Dr. Rosenzweig opined that Ms. Tucker's implanting physician Dr. Ricketts could not obtain informed consent because of the allegedly inadequate warnings, he is effectively opining as to Dr. Ricketts' personal knowledge or lack thereof at the time of the surgery.  See In re: Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig., 2016 WL 4493457, at *3 (S.D.W. Va. Aug. 25, 2016) (excluding testimony "on what 'all physicians' know or should know or what 'all physicians' rely on in making informed decisions").

8

The Court finds Defendants' arguments are without merit. First, Plaintiffs bear the burden to establish causation. To show proximate cause on their failure to warn claims in this case, Plaintiffs must prove that a proper warning to Ms. Tucker's implanting surgeon Dr. Ricketts would have caused him not to use or prescribe the TVT-S. Winter v. Novartis Pharms. Corp., 739 F.3d 405, 408 (8th Cir. 2014) (quoting Moore v. Ford Motor Co., 332 S.W.3d 749, 761-63 (Mo. 2011) (en banc)). Under Missouri law, plaintiffs are entitled to the presumption that a warning, if given, would have been heeded. Id. Dr. Rosenzweig's opinion is relevant to whether Ethicon gave adequate warning to physicians such as Dr. Ricketts.

Second, contrary to Defendants' argument, Dr. Rosenzweig's opinion does not seek to attribute a state of mind to the implanting physician. Rather, his report opines about the adequacy of the warning and the knowledge of the medical community in general. The MDL Court has repeatedly held that Dr. Rosenzweig may properly offer expert opinions on these topics.[3] See, e.g., Nall v. C.R. Bard, Inc., 2018 WL 524632, at *2 (S.D.W. Va. Jan. 23, 2018); Martin v. Ethicon, Inc., 2017 WL 6348627, at *2 (S.D.W. Va. Dec. 12, 2017); In re Ethicon, Inc. (Free v. Ethicon, Inc.), 2017 WL 660017, at *3 (S.D.W. Va. Feb. 14, 2017). Missouri federal district courts have held similarly. See Dorgan v. Ethicon, Inc., 2020 WL 5367062, at *3 (W.D. Mo. Sept. 8, 2020) (denying motion to exclude Dr. Rosenzweig's case-specific opinions as to informed consent); Wegmann v. Ethicon, Inc., 2020 WL 5814475, at *5-6 (E.D. Mo. Sept. 30, 2020) (same, citing Dorgan); Sutton v. Ethicon, Inc., 2020 WL 5801049, at *6 (E.D. Mo. Sept.

---

[3] The MDL Court has also held that Dr. Rosenzweig is qualified to give opinions about the product warnings on mesh devices. See Wilkerson v. Boston Scientific Corp., 2015 WL 2087048, at *7-8 (S.D.W. Va. May 5, 2015); Huskey v. Ethicon, Inc., 29 F.Supp.3d 691, 703-04 (S.D.W. Va. 2014) (holding Dr. Rosenzweig was "qualified to testify generally on the adequacy of the TVT-O's product warnings and marketing materials"); see also Huskey v. Ethicon, Inc., 2015 WL 4944339, at *4-8 (S.D.W. Va. Aug. 19, 2015) (stating Dr. Rosenzweig's testimony provided sufficient support for the plaintiff's claims that warnings in the TVT-O Instructions For Use about "transient" groin pain were insufficient).

29, 2020) (same); see also Hosbrook v. Ethicon, Inc. 2020 WL 5214644, at *5 (S.D. Ohio Sept. 1, 2020) (same).

The Court will deny Defendants' Motion with respect to this issue.

### 2. Opinions concerning degradation, rigidity, roping, stiffening, curling, or cording

Next, Defendants state that Dr. Rosenzweig opines Ms. Tucker's alleged injuries were caused, in part, by deformation, rigidity, fraying, roping, cording, curling, and sharp edges of the mesh implant.  Defendants argue the Court should exclude such opinions as unreliable because they are based on pure speculation as Dr. Rosenzweig has not examined, analyzed, or tested Ms. Tucker's implant for signs of degradation or fraying, and Ms. Tucker's medical records and her treating physicians' testimony do not establish any evidence of degradation, rigidity, roping, stiffening, cording, and curling.

Defendants' argument is without merit.  Pathology was reviewed in this case and Ms. Tucker's explanting physician testified he observed during his removal procedure that her mesh had grossly deformed with collapsed pores, folded, corded, and rolled.  (Dr. Veronikis Dep. 42:11-44:19; 143:4-23, Oct. 19, 2019.)  Dr. Veronikis also photographically recorded Ms. Tucker's explanted mesh.  (Id. 42:11-44:19.)  The MDL Court has allowed Dr. Rosenzweig to provide case specific opinions regarding degradation, fraying and particle loss when his experience and the results of his examination of the plaintiff have warranted the admission of such testimony. In re Ethicon, Inc. Pelvic Repair Sys. Product Liab. Litig., 2017 WL 660017, at *2 (S.D.W. Va. Feb. 14, 2017).  The Court finds there is a sufficient evidentiary basis for Dr. Rosenzweig's opinions, and they are sufficiently reliable.  The Court will deny Defendants' Motion with respect to this issue.

*3. Opinions concerning Ms. Tucker's need for future surgical intervention*

Next, Defendants seek to exclude Dr. Rosenzweig's opinions that Ms. Tucker "will have continued and ongoing complications and need additional medical treatments in the future related to the permanent complications she suffered from the inadequacies and implantation of the TVT-S." (ECF No. 45-3 at 16.) Defendants assert these opinions are speculative, unreliable, and irrelevant. This argument is conclusory as Defendants do not provide any factual support for it.

The Court finds Dr. Rosenzweig's challenged opinions are relevant to causation and damages components of a number of Ms. Tucker's remaining claims. As to Defendants' other challenges, Dr. Rosenzweig is a medical doctor with thirty-seven years of practical urogynecological experience involving pelvic floor complications, a number of years of relevant teaching experience, and numerous published articles and lectures on pelvic organ prolapse, urinary incontinence, and repair of pelvic organ prolapse. (ECF No. 45-3 at 1-2.) As of the date of his case-specific expert report, August 19, 2019, Dr. Rosenzweig had performed over 1000 pelvic floor surgical procedures of varied kinds, including over 350 surgeries relating to pelvic mesh complications. (Id. at 2.) He is familiar with Ms. Tucker's medical history and reviewed scientific literature and corporate documents from the Defendants, depositions of Ethicon employees, and records and depositions specific to Ms. Tucker. (Id. at 2-3.) Dr. Rosenzweig conducted a personal examination of Ms. Tucker in August 2019. (Id. at 10-12.) He then issued the following opinions regarding Ms. Tucker's prognoses and need for additional future medical treatments:

> 1. It is my opinion to a reasonable degree of medical certainty that Ms. Tucker will have continued and ongoing complications and need additional medical treatments in the future related to the permanent complications she suffered from the inadequacies and implantation of the TVT-S. Despite her physician's efforts, pieces of the TVT-S still likely remain in Ms. Tucker's pelvic tissue. There is nothing else contained in Ms. Tucker's medical records, other than the presence

>of the TVT-S in her body, that could account for her chronic pain and dyspareunia. Therefore, Ms. Tucker will continue to suffer from long-term risks of future erosion, infection, vaginal pain and pelvic pain. She will likely also experience chronic foreign body reaction and chronic inflammation. These risks remain for as long as the mesh remains in her body. Therefore, Ms. Tucker may need additional surgery to remove any remaining mesh as well as the possibility of additional vaginal surgeries for vaginal scarring, pelvic pain, and recurrent infections, and will likely continue to suffer other injuries associated with the original implantation of the device. Ms. Tucker will likely require pelvic floor therapy and physical therapy to alleviate her symptoms stemming from the implant of the mesh. I highly recommend that Ms. Tucker be followed up with a continuum of care, including but not limited to, physical therapy, counseling, biofeedback therapy, and/or Botox therapy for her chronic pain, which may or may not be ultimately successful. This continuum of care could range anywhere from months to 5 years. This continuum of care is time-consuming, socially disruptive, very expensive, and not usually covered by insurance.
>
>2. Mesh Erosion/Exposure Requiring Excision/Revision Procedure: Prognosis is poor. It is highly unlikely, even with aggressive physical therapy, biofeedback, medication use and/or surgical intervention, for Ms. Tucker to have complete resolution of the mesh erosions/exposures. More likely than not, she will require future surgery to treat symptomatic mesh erosion as remnants of the TVT-S remain in her body and will continue to cause chronic/permanent inflammation, foreign body reaction, scarring, future erosions, pain and associated complications.

(ECF No. 45-3 at 16-17).

The Court finds Dr. Rosenzweig's opinions are sufficiently grounded in the facts of this case and his individual expertise. He has extensive experience with problems that arise from pelvic mesh implantation and removal surgeries, and his future mesh surgery and complications opinions are based on reviews of Ms. Tucker's medical records, relevant medical and scientific literature, Defendants' corporate documents and employee depositions, and on his own physical examination of Ms. Tucker. Thus, Dr. Rosenzweig's opinions as to future pelvic mesh surgery and other complications are not speculative and are sufficiently reliable.

Defendants' challenge is to Dr. Rosenzweig's conclusions, not his methodology. "In determining whether expert testimony is admissible, '[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.'" Adams v. Toyota

Motor Corp., 867 F.3d 903, 914-15 (8th Cir. 2017) (quoting Daubert, 509 U.S. at 594–95). As a result, this is a matter for cross-examination, not exclusion of the testimony. The Court will deny Defendants' Motion with respect to this issue.

> *4. Any opinion that Ms. Tucker's TVT-S implant had "defects" or was "defective."*

Finally, Defendants state they anticipate Dr. Rosenzweig will attempt to opine that the TVT-S has "defects" or is defective, based on his use of the term "defects" in the Case-Specific Report. Defendants argue the Court should preclude Dr. Rosenzweig from stating that Ms. Tucker's mesh implant contained "defects," that her injuries were caused by "defects," or from offering any other opinions using the terms "defect," "defective," or related forms. See Sederholm v. Boston Sci. Corp., 2016 WL 3282587, at *2 (S.D.W. Va. June 14, 2016) ("An expert may not state his opinion using 'legal terms of art,' such as 'defective,' 'unreasonably dangerous,' or 'proximate cause.'").

Plaintiffs respond that Dr. Rosenzweig has testified many times in the MDL pelvic mesh litigation and he and Plaintiffs' counsel understand the limitations against offering legal conclusions, framing opinions in terms of legal conclusions, and the need to avoid using legal terms of art. Plaintiffs state that Dr. Rosenzweig will not use the same words on the witness stand as in his reports, and assert that any objections to his testimony should be addressed at trial.

Based on Plaintiffs' representation that Dr. Rosenzweig will not use the terms "defect," "defective," or related forms in his testimony, the Court will deny Defendants' Motion as moot with respect to this issue.

## IV. Conclusion

For the foregoing reasons, Defendants Ethicon, Inc. and Johnson & Johnson's Motions to Limit the Case-Specific Opinions and Testimony of Paul J. Michaels, M.D. and Bruce Rosenzweig, M.D. are denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Ethicon, Inc. and Johnson & Johnson's Motion to Limit the Case-Specific Opinions and Testimony of Paul J. Michaels, M.D. (ECF No. 37) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Ethicon, Inc. and Johnson & Johnson's Motion to Limit the Case-Specific Opinions and Testimony of Bruce Rosenzweig, M.D. (ECF No. 39) is **DENIED in part** and **DENIED in part** as moot.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>4th</u> day of March, 2021.